UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KALI J. ITSON, *Pro Se*, | ) | Case No.: 1:23 CV 892 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| CITY OF CLEVELAND HEIGHTS, *et al.*, | ) | |
| | ) | |
| Defendants | ) | ORDER |

Currently pending before the court in the above-captioned case is the City of Cleveland Heights (the "City") and Police Chief Christopher Britton's ("Chief Britton") (together, "Defendants") Motion for Summary Judgment ("Motion") (ECF No. 32), pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the court grants Defendants' Motion with respect to Plaintiff's claims arising under federal law. The court declines to exercise supplemental jurisdiction with respect to Plaintiff's state law claims.

**I. BACKGROUND**

**A.      Factual Background**

On May 1, 2023, Plaintiff Kali J. Itson ("Itson"), *Pro Se*, filed a forty-four claim Complaint against Defendants, alleging civil rights violations under federal and state law. (Compl., ECF No. 1.) Plaintiff's Complaint involves three events.

On September 10, 2021, City of Cleveland Heights officers responded to a call at

approximately 1:00 a.m. regarding a disturbance at the multi-family unit in which Plaintiff resides. (Mot. at PageID 234.) A responding officer was met by the second-floor tenant who stated that Itson was disturbing her by banging on the walls and playing loud music. (*Id.*) Though Itson could not be located at the time, a neighbor informed the officers that Itson was growing marijuana in the back yard of the shared unit. (*Id.* at PageID 235.) Officers located the marijuana plants and seized them as evidence. (*Id.*) At approximately 2:00 a.m. the same day, officers were again dispatched to the same address and took a report that Itson had threatened neighbors for reporting the marijuana. (*Id.*) Based on that report, a warrant was issued for Plaintiff's arrest on September 13, 2021. (*Id.*)

On September 15, 2021, officers again responded to Itson's address following a report of a fight. (*Id.*) Though Plaintiff stated that he was acting to defend himself from his neighbor's attack, the officers cited him for disorderly conduct and arrested him based on the prior warrant. (*Id.* at PageID 236; Compl. ¶¶ 38–39.) Plaintiff alleges that, despite his lack of resistance to his arrest, the officers began "aggressively tugging on [his] arms" and denied him the opportunity to retrieve his medicine unless he consented to a search of his home. (Compl. ¶¶ 40, 46.) Defendants dispute Plaintiff's claim, and assert that, "[n]o force was used in cuffing Itson." (Def.'s Mot. at PageID 236.) Plaintiff alleges that as a result of that interaction, his marijuana plants were seized without warrant and later destroyed. (Compl. ¶ 68.)

Next, Plaintiff alleges that, on May 12, 2022, he appeared at a Cleveland Heights courthouse, the day his case for menacing and disorderly conduct was initially set for trial. (Compl. ¶¶ 121–22.) Although the proceedings were apparently rescheduled, Plaintiff demanded that the Bailiff bring the prosecutor to speak with him so that he could discuss his desire to represent himself. (*Id.* ¶ 123.) The Bailiff declined to do so, which prompted Plaintiff to begin arguing with the Bailiff. (*Id.* ¶ 128.) The

-2-

Bailiff then asked Plaintiff to vacate the building. (*Id.*) Plaintiff left after being asked to do so. (*Id.* ¶ 132.) Plaintiff asserts that his being asked to leave after an argument with court staff was in retaliation for his seeking to represent himself. (*Id.* ¶ 129.)

**B.     Procedural History**

On May 1, 2023, Plaintiff filed a Complaint (ECF No. 1) in the United States District Court for the Northern District of Ohio against Defendants. Plaintiff sought to amend his Complaint twice (ECF No. 18, 61), which the court denied, finding Defendants' arguments that amendment would cause undue delay and prejudice well-taken. (*See generally* ECF No. 65.) Plaintiff's Complaint alleges violations of his constitutional rights during the incidents described above, bringing numerous claims under 42 U.S.C. § 1983, as well as 42 U.S.C. § 1985, Title VI, and state law. The court previously issued an Order (ECF No. 64) on September 27, 2024, denying Plaintiff's Motion for Summary Judgment (ECF No. 16). Thereafter, he filed a second Motion for Summary Judgment (ECF No. 20) and a third Motion for Summary Judgment (ECF No. 34). The court denied the first Summary Judgment Motion (ECF. No. 64), as well as the second and third Motions (ECF. No. 51). On October 31, 2023, Defendants filed a Motion for Summary Judgment ("Motion") (ECF No. 32). Plaintiff filed an Opposition (ECF No. 41) on November 9, 2023. Defendants filed no reply.

Following several interim motions and a lengthy discovery dispute, the court held a Status Conference on October 23, 2024. During that conference, Defendants produced video footage which the court found to be responsive to Plaintiff's outstanding discovery request. (See ECF No. 71, Minute Order.) The court ordered Defendants to provide Plaintiff a copy of the video footage at issue. Defendants filed notice of the transmission. (ECF No. 72.) The court set out a time line which allowed Plaintiff to supplement his response to Defendants' Motion for Summary Judgment (ECF

No. 32) if he so desired, limited in scope to information gleaned from the October 18, 2024, video submission by Defendants. (ECF No. 71, Minute Order.) No such supplement was filed. The court will now address Defendants' Motion for Summary Judgment (ECF No. 32).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) governs summary judgment and provides:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

A party asserting there is no genuine dispute as to any material fact or that a fact is genuinely disputed must support the assertion by citing to particular parts of materials in the record or showing that materials cited do not establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1).

In reviewing summary judgment motions, the court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943–44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In most cases, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Scheibil*, 188 F.3d 365, 369 (6th Cir. 1999).

The moving party has the burden of production to make a prima facie showing that it is

entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). If the moving party meets its burden of production, then the non-moving party bears an affirmative duty to point out specific facts in the record that create a genuine issue of material fact. *Zinn v. United States*, 885 F. Supp. 2d 866, 871 (N.D. Ohio 2012) (citing *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992)). The non-movant must show "more than a scintilla of evidence to overcome summary judgment;" it is not enough to show that there is slight doubt as to material facts. *Zinn*, 885 F. Supp. 2d at 871 (quoting *Fulson*, 801 F. Supp. at 4). Moreover, the trial court does not have "a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).

### III. ANALYSIS

**A.    Section 1983 Claims**

*1.    Chief Britton*

Defendants argue that Plaintiff's claims, pursuant to 42 U.S.C. § 1983 ("Section 1983"), against Chief Britton in his official capacity should be treated as an action against the City itself.

When a person acting under the color of state law deprives another of their constitutional rights, a remedy is provided by § 1983. *See* 42 U.S.C. § 1983; *see also Collins v. City of Harker Hts.*, 503 U.S. 115, 120 (1992). Official capacity suits are generally used for the purpose of pleading an action against an entity of which an officer is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). However, "[t]here is no longer a need to bring official-capacity actions against local government officials," because under *Monell*, local governments may be sued directly. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). The claim against Chief Britton is "equivalent to a suit against

the entity on whose behalf he acts[,]" namely the City of Cleveland Heights. *Johnson v. Karnes*, 398

F.3d 868, 877 (6th Cir. 2005). Since the claims against Chief Britton are duplicative of those asserted

against the municipality, the claims against Chief  Britton are hereby dismissed.

> *2.*     *City of Cleveland Heights*

> (a).  Monell liability

i. Whether the Officers or Employees acted Pursuant to a City Custom or Policy

The City argues that the evidence in this case is insufficient to establish *Monell* liability, and

as such, summary judgment should be entered in their favor.

To prevail in a § 1983 suit against a municipality, "a plaintiff must show that the alleged

federal right violation occurred because of a municipal policy or custom." *Thomas v. City of

Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). Where a § 1983 claim is asserted against a

municipality, courts must analyze two separate issues: "(1) whether [the] plaintiff's harm was caused

by a constitutional violation, and (2) if so, whether the city is responsible for that violation." *Collins*,

503 U.S. at 120 (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 817 (1985)). Most cases surround the

latter of these two issues. *See* 503 U.S. at 120.

A municipality can only be sued under § 1983 when the enforcement of a policy or custom

is the "moving force" of the constitutional violation, meaning that it directly caused the deprivation

of constitutional rights. *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 690–94

(1978). A custom does not need to be formally approved, but can "be so permanent and well settled"

that it becomes widespread and has "the force of law" among officials. *Id.* (citing *Adickes v. S. H.

Kress & Co.*, 398 U.S. 144, 167–68 (1970)).

Municipal liability cannot be based on *respondeat superior*, meaning it cannot stand where

an employee merely applies a policy in an unconstitutional manner. *City of Canton  v. Harris*, 489 U.S. 378, 387 (1989). However, local governing bodies may be sued under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690. Further, even in the absence of an unconstitutional policy, a party may challenge a custom of illegal practices. (*Id.*) As the Sixth Circuit has noted:

> A plaintiff can show the existence of a municipal policy, practice, or custom by identifying: (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations.

*Young v. Campbell Cnty., Kentucky*, 846 Fed. Appx. 314, 329–30 (6th Cir. 2021) (unpublished) (internal citations and quotation marks omitted).

The cut-off date for discovery in this case was October 31, 2023. The court resolved an outstanding discovery dispute regarding body camera footage on October 24, 2024. Plaintiff has had ample time to utilize the various discovery tools available to gather evidence to support his claims. Defendants assert that Plaintiff has "produced no evidence indicating that the Cleveland Heights police officers were acting pursuant to an unconstitutional policy or custom[,]" nor has he "produced evidence showing that any Cleveland Heights officer violated his constitutional rights." (Mot. at PageID 242–43.)

Plaintiff does not point to specific official policies or customs which the City allegedly violated, but generally states that, "the City bears responsibility for the alleged constitutional violations due to its customs, policies, or practices of withholding exculpatory evidence, failure to

conduct investigations to redress grievances on the plaintiffs behalf, intentionally impeding the

plaintiffs equal protection rights to gain access to crucial evidence." (Opp'n at PageID 334.)

Plaintiff frequently refers to what facts he can show or will show in the event of trial. For

example, Plaintiff states:

> I will demonstrate there is evidence to suggest that the alleged
> constitutional violations were the result of a widespread or persistent
> pattern of misconduct within the city . . . . (Opp'n at PageID 333.)

> The plaintiff will provide evidence at the time of trial, which suggests
> that the actions of the individual officers involved in the plaintiffs
> arrest may be indicative of a broader problem within the City of
> Cleveland Heights and its Police Department. (*Id.*)

> Medical records and eyewitness accounts will be presented to
> substantiate the plaintiffs claims. (*Id.* at PageID 329.)

> The plaintiff can demonstrate that Chief Britton, in his official
> capacity, failed to adequately train or supervise the officers involved
> in the plaintiffs arrest, evidence submissions and police reports, plant
> seizures, unlawful detainments etc. (*Id.* at PageID 334.

It is true, as Plaintiff's state, that he has not produced evidence of any policy or custom  of

the City pursuant to which any of its officers operated in violating his constitutional rights in the

various ways he has alleged.  In addition to not pointing to any specific policy or custom of the City

pursuant to which the officers acted, his reliance on a policy of inadequate training was also not

supported by any factual evidence or expert testimony. Thus, this case is unlike *Jackson v. City of

Cleveland*, where the Sixth Circuit found that Plaintiffs had produced sufficient evidence to create

a genuine dispute of material fact. There, plaintiffs, who maintained that the municipality did not

adequately train its employees regarding its *Brady* obligations, presented deposition testimony

bearing on that issue:

> One officer testified that he could not recall having "receive[d] any training in which [he] learned that officers have an obligation to disclose exculpatory evidence." Another testified that he received "no [training] to place any witness statements in the official file." A reasonable jury could interpret this testimony as indicating that officers received no training, on-the-job or otherwise, in their *Brady* obligations generally or in their obligation to provide witness statements to prosecutors.
> There is therefore a genuine issue of material fact as to whether Cleveland's training of its officers in their disclosure obligations was sufficient . . . .

*Jackson v. City of Cleveland*, 925 F.3d 793, 836 (6th Cir. 2019) (cleaned up). Unlike the deposition testimony the plaintiffs in *Jackson* cited, Plaintiff has not put forth evidence of inadequate police training or in respect to any other basis for liability.

The court finds that Defendants have met their burden of showing that there is an absence of evidence to support Plaintiff's § 1983 claims.  Therefore,  Plaintiff, as the non-moving party, bears an affirmative duty to point out specific facts in the record that create a genuine dispute of material fact. The court finds that Plaintiff has failed to do so. He has not put forth evidence that would support a finding that officers violated his rights pursuant to a custom or policy of the City, including inadequate training.  Consequently, the court grants Defendants' Motion for Summary Judgment with respect to Plaintiff's claims arising under 42 U.S.C. § 1983. Nevertheless, the court, in the alternative, addresses the additional reason why Defendants have alleged they are entitled to summary judgment--that none of the officers or employees violated Plaintiff's civil rights in their interactions with him.  The court finds that Defendants' argument is well-taken, that they are also entitled to summary judgment on each of such § 1983 claims because there is no material issue of disputed fact regarding whether any officer or employee of the City violated Plaintiff's constitutional rights.

*ii. Whether the Officers Violated Plaintiff's Constitutional Rights*

*1.      Excessive Force*

Plaintiff asserts a claim for excessive force, asserting that, "officers' use of verbal force and physical force instructed and inflicted during hand cuffing was excessive . . . ." (Opp'n at PageID 337.) Defendants argue, based on dash camera footage, and Officer Allen's affidavit, that there is no genuine dispute of material fact on this claim. (Mot. at PageID 246–47.)

In the specific context of a claim for unduly tight or excessively forceful handcuffing, the Sixth Circuit employs the following test to determine whether a claim is sufficient to survive summary judgment:

> In order for a handcuffing claim to survive summary judgment, a plaintiff must offer sufficient evidence to create a genuine issue of material fact that: (1) he or she complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced "some physical injury" resulting from the handcuffing.

*Baynes v. Cleland*, 799 F.3d 600, 608 (6th Cir. 2015) (citations omitted).

Defendants argue that Plaintiff never complained that his handcuffs were too tight, and further that Officer Allen's affidavit testimony indicates that the officer ensured the handcuffs were "double-locked[,]" which is an affirmative measure to ensure that the handcuffs are not too tight. (*Id.* at PageID 247.) In contrast, Plaintiff cites to no evidence to support his claim of excessive force. Plaintiff points to no evidence to contradict that which Defendants have produced or from which the court could conclude that Plaintiff complained, the complaints were ignored, or that physical injury resulted. Consequently, Plaintiff has not produced any evidence which creates a genuine dispute of material fact with respect to the underlying constitutional violation. Thus, the court grants Defendants' Motion (ECF No. 32) in respect to Plaintiff's excessive force claim.

*2.      First Amendment Retaliation*

-10-

Plaintiff also asserts a claim for First Amendment Retaliation. Specifically, Plaintiff alleges that, on May 12, 2022, he went to a City of Cleveland Heights' courtroom and requested assistance with his self-representation from Bailiff Cassandra M. Jones. (Compl. ¶¶ 122–29.) Plaintiff alleges that he exercised his First Amendment rights by "peacefully criticizing her professionalism as a city employee", after which she asked him to leave, which amounted to retaliation. (*Id.*) To the extent that Plaintiff's First Amendment claim arises under Section 1983, his claim does not withstand summary judgment, as discussed above. Again, Plaintiff has cited to no evidence which could serve as the basis for a finding of municipal liability. Moreover, Plaintiff's First Amendment retaliation claim fails because he has not demonstrated that he was engaged in protected conduct.

To succeed on a claim for First Amendment retaliation, a plaintiff must show that, "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Defendants argue that Plaintiff's claim fails at the first element because he has not shown evidence that he engaged in protected conduct. (Opp'n at PageID 247.) This argument is well-taken. As discussed, Plaintiff alleges that he appeared at a Cleveland Heights courthouse on May 12, 2022, the day his case for menacing and disorderly conduct was initially set for trial. (Compl. ¶¶ 121–22.) Although the proceedings were apparently rescheduled, Plaintiff demanded that the Bailiff bring the prosecutor to speak with him so that he could discuss his desire to proceed *pro se*. (*Id.* ¶ 123.) The Bailiff declined to do so, which prompted Plaintiff to begin arguing with the Bailiff. (*Id.* ¶ 128.) The

Bailiff then asked Plaintiff to vacate the building. (*Id.*) Plaintiff left after being asked to do so. (*Id.* ¶ 132.) According to Plaintiff, his being asked to leave after an argument with court staff was in retaliation for his seeking to represent himself. (*Id.* ¶ 129.)

Here again, Plaintiff's Opposition makes conclusory statements without citing to evidence in the record. Plaintiff states that his argument with the Bailiff amounted to his "exposing corruption within a government agency," and that he "will present evidence demonstrating that their [sic] actions were protected speech and the defendant's actions constituted unlawful retaliation." (Opp'n at PageID 328.) However, Plaintiff does not follow up with that evidence.

Courthouses are nonpublic fora, wherein "the First Amendment rights of everyone ... are at their constitutional nadir." *Enoch v. Hamilton Cnty. Sheriff's Off.*, No. 22-3946, 2024 WL 3597026, at *5 (6th Cir. July 31, 2024), *cert. denied sub nom. Enoch v. Hamilton Cnty. Sheriff's Off.*, 145 S. Ct. 1429 (2025) (*citing Mezibov v. Allen*, 411 F.3d 712, 718 (6th Cir. 2005)). Plaintiff's own account of the interaction indicates that he was asked to leave because he was engaged in disruptive behavior. Plaintiff has failed to show that his being asked to leave was anything more than court staff maintaining order. Thus, both because Plaintiff has failed to establish a basis for municipal liability, and because Defendants have shown that there is no genuine dispute as to any material fact related to this claim, the court grants Defendants' Motion for Summary Judgment (ECF No. 32) with respect to Plaintiff's First Amendment Retaliation claim.

3. Fourth Amendment

Plaintiff raises a Fourth Amendment claim made applicable to the states by the Fourteenth Amendment, claiming an unlawful search of his residence and seizure of his marijuana plants. However, no warrant or probable cause need be shown if there is consent to search. *Schneckloth v.*

-12-

*Bustamonte*, 412 U.S. 218, 219 (1983). Consent is valid if "the facts available to the officer at the moment...warrant a man of reasonable caution in the belief that the consenting party had authority over the area."  *Illinois v Rodriguez*, 497 U.S. 177. 188 (1990) . Here, the officers were given authority by a resident of the multi-family unit to search outside in a common area for the suspected marijuana plants. Plaintiff has pointed to no facts or law that would support a finding that this was not a lawful consent search. There being no material issues of disputed facts regarding whether the search was consensual, summary judgment is hereby entered in Defendant's favor.

> 4.      *Due Process*

Plaintiff alleges that his due process rights were violated when Defendants' officers seized his plants from the common area behind his residential building without notice, and in their subsequent handling of the items. (Compl. ¶ 68.)

As an initial matter, Defendants state that the plants were illegal marijuana. (Def.'s Mot. at PageID 244, 249–50.) While Plaintiff initially stated that the plants were not marijuana, but hemp, which he was using for research purposes, (ECF No. 1–2 at PageID 48), he later states that the plants were marijuana (Opp'n at PageID 346–47). Thus, there is no dispute that the plants were marijuana. Further, Itson contends that each of the marijuana plants seized "were valued at $10 Million per item based off the projected reproduction and potential growth of value of these items," and seeks monetary damages as a result of their destruction. (ECF No. 1–3 at PageID 54.) Plaintiff is not clear the extent to which his plants were not returned.  He both alleges that the property was destroyed and that the property was returned. (ECF No. 1–2 at PageID 48 ("when it was returned it was after they wrongfully attached it to a case i wasnt found guilty for"; "violating my fouth [sic] amendment search and seizure clause by seizing and destroying my property wrongfully with out due process").)

While Defendants' Motion only addresses a substantive due process claim, Plaintiff appears to advance both substantive and procedural due process challenges related to the marijuana. (Compl. ¶¶ 216, 266; ECF No. 1–2 at PageID 48.)

### Substantive Due Process

Neither party disputes that the marijuana plants were present in the common area outside the multi-family residential unit. (*See* Compl. ¶ 67; Mot. at PageID 249.) Moreover, it is not disputed that the officers were directed to the marijuana plant by one of the unit's residents.

To the extent that Plaintiff brings a substantive due process challenge to the seizure of the plants, his claim would be properly analyzed under the Fourth Amendment standard. *Est. of George ex rel. George v. Michigan*, 63 Fed. Appx. 208, 211–12 (6th Cir. 2003) (unpublished) (citing *Graham v. Connor* 490 U.S. 386, 396 (1989) ("[w]here a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."). This claim is, therefore, substantively duplicative of Plaintiff's Fourth Amendment challenge on which the court granted Defendants' Motion for Summary Judgment.

### Procedural Due Process

Beyond the initial seizure of the marijuana, Plaintiff appears to argue that he was entitled to notice and an opportunity to be heard before his marijuana plants were destroyed following the seizure. (ECF No. 1–3 at PageID 54.) Plaintiff is unclear regarding whether and to what extent the marijuana was returned to him and whether it has been destroyed or is simply being withheld. In his Complaint, Plaintiff states:

-14-

> A few days after court, in June of 2022, I received a phone call from a blocked number, it was a DEFENDANTS' City of Cleveland Heights employee attempting to return the illegally seized property to my primary residence, not where the DEFENDANTS officers originally seized it from. When I Mr. Itson got in contact with the illegally seized property, it was dismantled, destroyed and disaffirmed, half of the property is still missing and is considered lost, stolen, damaged and destroyed.

(Compl. ¶¶ 140–41.) Itson also states:

> Notwithstanding the termination of criminal proceedings against him by acquittal at trial, the City did not return to him all of the contents, that was wrongfully seized. Mr. Itson is entitled to possession of the contents within the pots, and a declaration that continues [sic] impoundment of his property is unlawful.

(Compl. ¶ 421.) Plaintiff further states that "[t]he defendants never gave [him] a [sic] opportunity to reclaim the property and *when it was returned* it was after they wrongfully attached it to a case [he] wasnt [sic] found guilty for." (ECF No. 1–2 at PageID 48 (emphasis added).)

Though both parties have provided threadbare arguments on this point, the court finds that Plaintiff does not have a property interest in the seized marijuana plants because they are contraband under federal law. 21 U.S.C. § 812, 841(a)(1), 844(a). The court's ruling here is consistent with that of other district courts under similar factual circumstances. *See e.g.*, *Hoover v. Michigan Dept. of Licensing and Reg. Affairs*, No. 19-CV-11656, 2020 WL 230136, at *9 (E.D. Mich. Jan. 15, 2020) ("Thus, under federal law, marihuana is contraband per se, which means that no person can have a cognizable legal interest in it."); *Viridis Laboratories, LLC v. Kluytman*, No. 1:22-CV-283, 2023 WL 5058087, at *3 (W.D. Mich. June 20, 2023),

-15-

report and recommendation adopted, No. 1:22-CV-283, 2023 WL 4861698 (W.D. Mich. July 31, 2023) ("federal law simply does not recognize the property or liberty interests Plaintiff seeks to vindicate here"); *Little v. Gore*, 148 F. Supp. 3d 936, 956 (S.D. Cal. 2015) ("In this case, plaintiff cannot recover damages as a result of the confiscation or destruction of marijuana because he had no cognizable property interest in the marijuana."); *Salazar v. City of Adelanto*, No. ED CV 19-2333-PA-SP, 2020 WL 5778122, at *7 (C.D. Cal. Aug. 31, 2020), report and recommendation adopted, No. EDCV192333PASP, 2020 WL 5764404 (C.D. Cal. Sept. 24, 2020) ("district courts within the Ninth Circuit have uniformly found that no private person can have a cognizable property interest in marijuana, even where the state has decriminalized its possession, cultivation, and/or sale"); *River N. Properties, LLC v. City and Cnty. of Denver*, No. 13-CV-01410-CMA-CBS, 2014 WL 7437048, at *3 (D. Colo. Dec. 30, 2014) ("Because marijuana is contraband per se under federal law, Plaintiff lacked a cognizable property interest in its cultivation under Section 1983.").

5.      False Arrest and Malicious Prosecution Claims

To the extent that Plaintiff's Complaint can be read to state false arrest and a malicious prosecution claims, summary judgment must also be granted in favor of the City. In the context of 1983, "[a] false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005); *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002). An arrest made pursuant to a facially valid warrant is usually a complete defense to a false arrest claim. *Stahl v. Czernik*, 496 F. App'x 621, 624 (6th Cir. 2112) (citing *Baker v. McCollan*, 443 U.S. 137, 143-144 (1979). Here, the officers arrested the Plaintiff pursuant to a warrant issued

-16-

by a judge for menacing and Plaintiff has produced no evidence that the officers should not have relied on that warrant. Thus, there is no evidence that the officers did not have probable cause to arrest Plaintiff.

The Sixth Circuit also recognizes a claim for malicious prosecution under the Fourth Amendment. *Barnes v. Wright*, 449 F.3d 709, 715 (6th Cir. 2006). It "encompasses wrongful investigation, prosecution, conviction, and incarceration." *Id*. at 716. There are for elements that one must prove to succeed on such a claim: (1) a prosecution was initiated against plaintiff and the defendant made, influenced or participated in the decision to prosecute; (2) there was a lack of probable cause for the prosecution; (3) as a consequence of the legal proceeding , plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal case was resolved in Plaintiff's favor. *Sykes v. Anderson*, 625, F.3d 294,308-309 (6th Cir. 2010). Here, though the case was dismissed when an essential witness did not appear, there was nevertheless probable cause for the prosecution. This is based on the fact that there was a warrant issued for his arrest by a judge on the affidavit of Chief Britton, indicating that Plaintiff's neighbor said he feared for his life because Plaintiff had threatened to kill him. The facts and circumstances known to the officer warranted his concluding that a crime had been committed. Plaintiff has produced no evidence to raise a material issue of fact regarding this claim.

As a result, Defendants' Motion for Summary Judgment (ECF No. 32) is granted with respect to Plaintiff's Due Process Claims.

### 6.      Equal Protection

To the extent that Plaintiff's Complaint may be read to assert an equal protection claim

-17-

under the Fourteenth Amendment, Defendants maintain that he will not be able to present any evidence at trial in support of such a claim.  Plaintiff does not respond with any evidence in support of his claim.  He only asserts that, "Defendant have violated [his] fundamental rights [,]" and "engaged in discriminatory and oppressive practices [.]" Consequently, the court finds that Plaintiff has not created a genuine issue of disputed fact on this claim, and therefore summary judgment is granted Defendants' favor.

**B.      Conspiracy Under 42 U.S.C. § 1985**

Plaintiff alleges that Defendants conspired to violate his civil rights. Specifically, Plaintiff states that Defendants' "agents and employees have used arrests, including intimidating tactics that would result in arrest and intimidation to interfere with Plaintiffs' rights to maintain his personal possessions in the exercise of Plaintiffs' rights[.]" (Compl. ¶ 335.) Defendants argue that Plaintiff fails to "provide any evidence that defendants had knowledge of the alleged objective of this conspiracy, targeted plaintiff because of his race or other protected characteristic, or took any overt act in furtherance of the conspiracy." (Mot. at PageID 249.)

Here again, Plaintiff makes general assertions without any reference to facts. Acknowledging the dearth of evidence presented, Plaintiff states that a "complaint must only contain enough factual matter to suggest that a claim is plausible, not require specific evidence at the pleading stage." (Opp'n at PageID 346.) This case is well beyond the pleading stage. Following the close of discovery, and on a Motion for Summary Judgment, Plaintiff must be able to cite to some facts in the record to demonstrate a genuine dispute. With respect to his § 1985 claim, Plaintiff fails to clarify what conduct he believes to be involved in the

conspiracy. His general statement, that "defendant's  actions perpetuate a system that disproportionately impacts individual [sic] and a specific group of individuals, thereby violating [his] equal protection rights[,]" is woefully insufficient. (Opp'n at PageID 346.) Plaintiff has failed to coherently describe or cite to any evidence related to a conspiracy. Further, plaintiff's claim is precluded by the intra-corporate conspiracy doctrine, which holds that employees of a single collective entity cannot conspire with each other. *See Hull v. Cuyahoga Valley Joint Vocational Sch. Dist.*, 926 F.2d 505, 509-510 (6th Cir. 1991). In this case,  there is only one Defendant. But to the extent that Plaintiff views the City's employees or personnel as co-conspirators, it is not viable.  Consequently, Defendants' Motion for Summary Judgment (ECF No. 32) is granted with respect to Plaintiff's claims pursuant to 18 U.S.C. § 1985.

C.      **Title VI**

Plaintiff alleges that Defendants discriminated against him on the basis of race, in violation of Title VI, 42 U.S.C. § 2000d, *et seq*. (Compl. ¶242.) Specifically, Plaintiff states that Defendants violated Title VI by "restricting Mr. Itson implementing his civil rights as a citizen, making false statements, being unresponsive and disregarding to his medical or safety concerns needs primarily because of race[.]" (*Id.* ¶ 245.)

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

Defendants argue that Plaintiff's Title VI claim fails because: 1) he failed to allege facts

-19-

which show that the City participated in a program which received federal financial assistance. Thus he has not shown that he was denied the benefits of such a program; and 2) Title VI does not create a private right of action to enforce disparate-impact regulations. (Mot. at PageID 250.) Both arguments are well-taken.

While Plaintiff fails to allege that Defendants receive federal financial assistance in his Complaint, he does state in his Opposition to Defendants' Motion that this element "is proven by the city's public acknowledgment of receiving COVID 19 relief funds from the federal government, etc." (Opp'n at PageID 347.) Here again, Plaintiff does not support his assertion with evidence.

Plaintiff's disparate impact claim pursuant to Title VI also fails because, "to state a claim under Title VI, the Supreme Court has made clear that a private individual must allege intentional discrimination, not disparate impact[.]" *Almendares v. Palmer*, 284 F. Supp. 2d 799, 802 (N.D. Ohio 2003) (citing *Alexander v. Sandoval*, 532 U.S. 275, 280–81 (2001)); *see also Smith v. Bauer*, No. 1:22-CV-382, 2023 WL 2706252, at *9 (W.D. Mich. Mar. 13, 2023), *Shah v. Univ. of Toledo*, No. 3:21 CV 581, 2021 WL 5140969, at *4 (N.D. Ohio Nov. 4, 2021). Thus, the court grants Defendants' Motion for Summary Judgment with respect to the Title VI claim.

**D.    State Law Claims**

Given that the court has granted Defendants' Motion for Summary Judgment with respect to all of Plaintiff's claims over which it has original jurisdiction, the court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, pursuant to 28 U.S.C. § 1367(c)(3). *Booker v. City of Beachwood*, 451 Fed. Appx. 521, 523 (6th Cir. 2011)

-20-

(unpublished) (Where "all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims.") (citing *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir.1996)).

## IV.  CONCLUSION

For the foregoing reasons, the court grants Defendants' Motion for Summary Judgment (ECF No. 32) with respect to Plaintiff's claims arising under federal law. The court declines to exercise supplemental jurisdiction with respect to Plaintiff's state law claims and hereby dismisses such claims, pursuant to 28 U.S.C. § 1367(c)(3).  IT IS SO ORDERED.

*/s/ SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

March 31, 2026